# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES M. DUNYAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:16-CV-02103** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the Court for disposition are two motions to dismiss Plaintiff James M. Dunyan's complaint, one filed by Defendants Correct Care Solutions, LLC, ("CCS"), Dr. Andrew Dancha, Carol Hines, and Dr. Vernon Preston (collectively referred to herein as the "CCS Defendants"), on December 21, 2016 (Doc. No. 32), and one filed by Defendant Wexford Health Sources, Inc. ("Wexford"), on January 10, 2017. (Doc. No. 35.) For the reasons provided herein, the Court will grant the CCS Defendants' motion to dismiss (Doc. No. 32), and will grant Defendant Wexford's motion to dismiss (Doc. No. 35). [1]

## I. BACKGROUND

This civil rights action was initiated upon the filing of a twenty-page complaint by <u>pro se</u> prisoner-Plaintiff James M. Dunyan on October 19, 2016. (Doc. No. 1.)[2]

---

[1] Also pending before the Court are Plaintiff's two motions to proceed <u>in forma pauperis</u>. (Doc. No. 2, 18.) The Court observes from the docket that Attorneys Stephen T. O'Hanlon and Patrick Geckle both entered their appearance on behalf of Plaintiff on February 7, 2017, (Doc. Nos. 39, 40, 45), later remitting a check in the amount of $400.00 to cover the civil action filing fee. In light of Plaintiff's counsel having tendered the filing fee, the Court will deny Plaintiff's motions to proceed <u>in forma pauperis</u> as moot. (Doc. Nos. 2, 18.)

[2] Plaintiff names the following Defendants in the caption of his complaint: Pennsylvania Department of Corrections, John Wetzel, Douglas Bopp, Dr. Andrew Dancha, Dr. Vernon Preston, Carol Hines, Wexford, Dr. Donald Kera, and CCS. (Doc. No. 1.)

On October 21, 2016, the Court issued an Order referring the case to the Prison Litigation Settlement Program, serving the complaint on Defendants to facilitate settlement negotiations, and staying this matter pending resolution of settlement negotiations. (Doc. No. 5.) On December 15, 2016, the Court vacated its referral Order upon receipt of a declaration from Defendants opposing referral on the basis that mediation would ultimately prove unsuccessful. (Doc. Nos. 8 and 13.)

The allegations forming the basis of Plaintiff's complaint are as follows. Plaintiff is currently housed at the State Correctional Institution at Benner, located in Bellefonte, Pennsylvania. Plaintiff alleges he was first diagnosed with cataracts in both eyes in 2014 by Dr. Sandards, an optometrist employed by the Department of Corrections ("DOC"). (Doc. No. 1 ¶ 42.) In March of 2015, Plaintiff was evaluated by an independent ophthalmologist, Dr. Adam Marcovitch, who recommended that Plaintiff undergo cataract surgery in both eyes. (Id. at ¶ 43.) Plaintiff alleges that Dr. Marcovitch advised the DOC, and specifically, CCS Defendant Dr. Dancha, that Plaintiff required cataract surgery in both eyes. (Id.) However, Plaintiff received cataract surgery only to his left eye. (Id. at ¶ 44.) Plaintiff alleges that despite the serious medical need for cataract surgery to his right eye, the DOC has refused to authorize this surgery pursuant to the "One Good Eye" policy.[3] (Id. at ¶¶ 45, 51.)

Plaintiff complains that he has a hypermature cataract in the right eye, and that the cataract is preventing further detection of retinal and optic nerve disease, for which he is especially at risk. (Id. at ¶¶ 36, 52.) He further complains that his left eye is deteriorating due to

_____

[3] The confidential treatment regime of the DOC, colloquially known as the "One Good Eye" policy, "[c]ulled to its essence," is an administrative policy that "denies cataract surgery to inmates who retain a threshold modicum of visual acuity in one eye, notwithstanding physician recommendations to the contrary." Hollihan v. Pa. Dep't of Corr., 159 F. Supp. 3d 502, 505 (M.D. Pa. 2016).

the stress caused by the loss of sight in his right eye, and that he experiences difficulty in reading and writing, has extreme headaches, and is substantially limited in his ability to perform manual tasks. (Id. at ¶¶ 53, 55, 56.) Plaintiff alleges that this administrative policy denies necessary surgical treatment to inmates with a severe eye disease in one eye so long as it is determined that the other eye provides some level of adequate vision. (Id. at ¶¶ 16, 24.)

Plaintiff filed a grievance regarding the decision not to perform surgery to his right eye. (Id. at ¶45.) On May 8, 2015, Plaintiff received a response to his grievance, which provided that he was "not eligible for cataract surgery on his right eye, [as] [Plaintiff's] vision is now considered fair because of the removal of the cataract in [his] left eye." (Id. at ¶ 47.) Plaintiff avers that he has been advised many times by the medical staff that their refusal to permit surgery to his right eye is due to the "One Good Eye" policy. (Id. at ¶ 51.)

Plaintiff argues that as the medical service provider for the DOC, Correct Care Solutions was under a duty to provide Plaintiff with appropriate care. However, under the One Good Eye policy, they have denied him that care; namely, the cataract surgery to his right eye. (Id. at ¶ 45.) Plaintiff asserts claims under the Eighth Amendment against Defendants in their official and individual capacities (Counts III and V); and a claim under the Pennsylvania Constitution (Count IV).[4]

On December 21, 2016, the CCS Defendants filed a motion to dismiss Plaintiff's complaint, together with a brief in support thereto. (Doc. Nos. 32, 33.) On January 10, 2017, Defendant Wexford filed a motion to dismiss with a supporting brief. (Doc. Nos. 35, 36.) On February 26, 2017, Plaintiff filed a counseled brief in opposition to the CCS Defendants' motion to dismiss. (Doc. No. 42.). The next day, Plaintiff, through counsel, filed a brief in opposition to

---

[4] Counts I and II are not challenged in Defendants' motions to dismiss.

Defendant Wexford's motion to dismiss. (Doc. No. 44.) No reply brief has been filed. Accordingly, this matter is now ripe for disposition.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Fair notice" in the context of Rule 8 "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Id. A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); see also Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations omitted).

A defendant may attack a complaint by a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the

complaint, <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff. <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. <u>Iqbal</u>, 556 U.S. at 663 (citing <u>Twombly</u>, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); <u>see</u> <u>also</u> <u>Phillips</u>, 515 F.3d at 234; <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007); <u>Stevenson v. Carroll</u>, 495 F.3d 62, 66 (3d Cir. 2007). When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Id.</u>

When presented with a <u>pro se</u> complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003); <u>Youse v. Carlucci</u>, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson</u>, 551 U.S. at 94 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

### B.     Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme Court held that

"deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (internal quotation marks and citations omitted).

There are several types of Eighth Amendment claims, including claims of: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim is comprised of both objective and subjective components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. Id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." Id.

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on the prison's denial of medical care, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element). Farmer v. Brennan, 511 U.S. 825 (1994); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). Because only egregious acts or

omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see Estelle, 429 U.S. at 106 (A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . .") "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

The "deliberate indifference" prong requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: knows of a prisoner's need for medical treatment and intentionally refuses to provide it; delays necessary medical treatment for a non-medical reason; or prevents a prisoner from receiving needed or recommended medical treatment. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F.Supp. 1335, 1339 (M.D. Pa. 1988); see McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981). Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming Cty., 912 F. Supp. 809, 815

(M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Carlson, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1 (1992). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty., 834 F.2d at 347. The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. See Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977). The Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical problems are actionable. See Keve, 571 F.2d at 161. In fact, courts have indicated that minor abrasions even involving associated bleeding do not rise to the level of an objectively serious medical need. See Wisneski v. Denning, No. CIV.A. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

## III.  DISCUSSION

### A.    The CCS Defendants' motion to dismiss

The CCS Defendants assert a number of arguments in support of their motion to dismiss. The CCS Defendants argue that Plaintiff's Eighth Amendment claim against them in their "official" capacities must be dismissed, as they are not employees of the DOC or the Commonwealth, but rather, are employed by Defendant CCS, a private corporation. Moreover, the CCS Defendants argue that Plaintiff has failed to state a claim against them because the "One

Good Eye" policy is a policy of the DOC and not a policy of Defendant CCS. Alternatively, the CCS Defendants argue that while Plaintiff has a clear legal right to medical attention and treatment, his complaint boils down to a mere disagreement as to the proper medical treatment he is receiving, which does not give rise to a constitutional violation. Finally, as to Defendant Carol Hines specifically, the CCS Defendants argue that Plaintiff has failed to advance any facts demonstrating the personal involvement of Defendant Hines in Plaintiff's medical care, which warrants her dismissal from this action. The Court addresses these arguments ad seriatim.

1.      Claims brought against the CCS Defendants in their official capacities

Defendants argue that Plaintiff's claims against them for compensatory and punitive damages in their official capacities should be dismissed. The Court agrees. A state official sued in his or her official capacity is not a "person" for purposes of § 1983 where the relief sought is monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 63-71 (1989). Will clearly precludes actions for damages against state officials acting in their official capacities. However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. Ex Parte Young, 209 U.S. 123 (1908); see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002). Consequently, to the extent Plaintiff seeks damages against the CCS Defendants in their official capacities under § 1983 for compensatory or punitive damages, those claims will be dismissed.

2.      Claims brought against Defendant CCS

In the motion to dismiss, Defendant CCS argues that Plaintiff's complaint is devoid of allegations that Defendant CCS adopted or maintained a policy or custom that caused the

deprivation of Plaintiff's Eighth Amendment right to medical care. Specifically, Defendant CCS reasons that it is a privately contracted entity with the DOC engaged to provide medical services to the inmates, and that the "One Good Eye Policy" at issue in this lawsuit is not a policy established by Defendant CCS, but rather is a policy maintained by the DOC.

Liability against a private company cannot be premised under a theory of respondeat superior or vicarious liability. See Monell v. N.Y. City Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). "[A]lthough a private corporation offering medical services cannot be held liable for an alleged § 1983 violation under a theory of respondeat superior, it can be held liable for a policy or custom that demonstrates deliberate indifference." Francis v. Carroll, 659 F. Supp. 2d 619, 625–26 (D. Del. 2009) (internal quotation marks omitted). Indeed, a private corporation like CCS may be held liable under Section 1983 if, while acting under color of state law, it knew of and acquiesced in the deprivation of the plaintiff's constitutional rights. Carter v. Pa. Dep't of Corr., No. 08-0279, 2008 WL 5250433, at *6 (E.D. Pa. Dec. 17, 2008) (citations omitted). To prevail on a Section 1983 claim against Defendant CCS, Plaintiff must demonstrate that Defendant CCS established and maintained a relevant policy or custom that directly caused the constitutional violation for which Plaintiff seeks relief. Id. at *7 (explaining that a private corporation, as part of its cost-saving policy "may be held liable for § 1983 constitutional violations if, while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a plaintiff's rights"); see Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (applying Monell to a private company providing medical services to inmates); Miller v. City of Phila., No. CIV. A. 96-3578, 1996 WL 683827, at *3-*4 (E.D. Pa. Nov. 25, 1996) (providing that the plaintiff must show that the corporation, "with deliberate indifference

to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm") (internal citations omitted);

Here, a review of the complaint reveals no allegations of a relevant corporate policy, practice or custom attributable to Defendant CCS. Rather, Plaintiff's Eighth Amendment deliberate indifference claim is grounded on allegations challenging the "One Good Eye Policy"—a policy undisputedly established and maintained by the DOC. Here, liability cannot attach to Defendant CCS absent allegations that Defendant CCS adopted or implemented its own unconstitutional policy, custom, or practice in connection with how its employees carried out the DOC's "One Good Eye Policy," that resulted in a denial of Plaintiff's constitutional rights. See Cox v. Lashbrook, No. 16-CV-1096, 2017 WL 1906840, at *7 (S.D. Ill. May 8, 2017) (dismissing private healthcare provider Wexford from complaint where Plaintiff made no allegations that defendant acted or failed to act as a result of an official policy espoused by Wexford, which would be required in order to hold it liable). Accordingly, the CCS Defendants' motion to dismiss Plaintiff's claims against Defendant CCS will be granted. However, the Court will permit Plaintiff an opportunity to amend his complaint to cure pleading deficiencies as to his claims against Defendant CCS, as set forth above.

3.      Dr. Andrew Dancha and Dr. Vernon Preston

CCS Defendants Dr. Andrew Dancha and Dr. Vernon Preston also move to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against them on the basis that Plaintiff's allegations amount to nothing more than a simple difference of opinion with respect to the treatment offered to him by prison medical staff, which they contend does not give rise to a viable Eighth Amendment violation.

The Court agrees with Defendants that, as currently pled, Plaintiff's complaint amounts to nothing more than a mere general disagreement as to the proper medical treatment he is receiving. Indeed, as persuasively argued by Defendants, Plaintiff has not alleged sufficient facts that demonstrate that Dr. Dancha and Dr. Preston acted with deliberate indifference to his alleged medical needs, as Plaintiff does not appear to object to the nature or quality of medical care he received, but rather, challenges a "DOC policy which prevents him from having surgery on his right eye," which does not, alone, support an Eighth Amendment deliberate indifference claim as against Dr. Dancha and Dr. Preston. (Doc. No. 33 at 7.) However, the complaint suffers from another serious pleading deficiency with regard to these Defendants. It appears from the complaint's allegations that Plaintiff attempts to implicate Dr. Dancha and Dr. Preston in the alleged Eighth Amendment violation based solely on their roles as supervisors.

To state a viable claim under § 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. See 42 U.S.C. § 1983; see also West v. Atkins, 487 U.S. 42, 48 (1988). As a prerequisite to asserting a cause of action under § 1983, a plaintiff must allege the personal involvement of each defendant in the events or occurrences that underlie the claim. See Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003). It is well established that "[c]ivil rights claims cannot be premised on a theory of respondeat superior. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." Millbrook v. United States, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). Specifically, a plaintiff must establish that each defendant: actually participated in the violation of plaintiff's constitutional rights; personally directed others to violate plaintiff's constitutional rights; or knew of and acquiesced in the deprivation of the

plaintiff's constitutional rights.  See Monell v. Dep't of Social Serv., 436 U.S. 658, 694-95

(1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195,

1207-08 (3d Cir. 1988).  Alternatively, Section 1983 liability may attach if a supervising

defendant established and maintained a policy, practice, or custom that directly caused the

constitutional violation.  See Sample v. Diecks, 885 F.2d 1099, 1117–18 (3d Cir. 1989);

Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010); A.M. ex rel. J.M.K. v. Luzerne

Cty. Juvenile Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

Here, Plaintiff has alleged that Dr. Dancha was the Medical Director at SCI-Benner, and

was employed as the Regional Medical Director by CCS.  (Doc. No. 1 ¶ 10.)  Plaintiff further

alleges that Dr. Dancha was responsible for overseeing medical care and approving treatment at

SCI-Benner.  (Id.)  Plaintiff alleges that Dr. Preston is the Health Care Director at SCI-Benner

and that he is responsible for overseeing and approving the medical care of inmates at SCI-

Benner.  (Id. ¶ 11.)  Aside from the description of these Defendants' respective titles, the

allegations set forth in the complaint against these two doctors are sparse.  Plaintiff alleges that

an outside ophthalmologist recommended cataract surgery on both of his eyes to Dr. Dancha in

early March of 2015.  (Id. ¶ 43.)  Plaintiff then provides that shortly thereafter, he underwent

surgery on his left eye.  (Id. ¶ 44.)  According to Plaintiff, Defendants, including Dr. Dancha and

Dr. Preston, refused to arrange for Plaintiff to undergo surgery on his right eye after the surgery

was performed on his left eye.  Plaintiff alleges that he filed a grievance regarding this issue on

March 19, 2015.  (Id. ¶ 45.)  More specifically, Plaintiff alleges that on April 13, 2015, he

appealed the initial review response given by Mr. Salamon, the grievance coordinator, who

provided that the "clinicians require sufficient time to assess the result of the first eye surgery to

determine any need for surgery on the second eye."  (Id. ¶ 46.)  Plaintiff alleges that

Superintendent Tammy Ferguson, in response to Plaintiff's appeal of his initial grievance, informed Plaintiff that he was not eligible for cataract surgery on his right eye, a decision that was later upheld by Chief Grievance Officer, Dorina Varner.  (Id. ¶¶ 47, 48.)

Accepting these allegations as true, and viewing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to adequately allege Dr. Dancha's and Dr. Preston's personal involvement in the alleged deprivation of Plaintiff's Eighth Amendment rights.  Specifically, the Court is unable to discern the roles Dr. Dancha and Dr. Preston played in the underlying Eighth Amendment violation, as the allegations neither directly implicate these Defendants in the ultimate administrative decision to deny Plaintiff's surgery, nor link the alleged constitutional deprivation to any particular failure on the part of these Defendants in their capacities as treating clinicians and/or physician-supervisors in evaluating and monitoring Plaintiff subsequent to the removal of the cataract in his left eye for possible recommendation of surgery on his right eye.  Stated differently, Plaintiff has failed to adequately describe the circumstances of Defendants' general "refus[al] to permit surgery on Dunyan's right eye,"  specifically as it relates to  the nature of Dr. Dancha's and Dr. Preston's involvement in the decision to withhold adequate medical care from Plaintiff,  and how their involvement amounted to deliberate indifference to Plaintiff's serious medical needs.  Accordingly, the Court will grant Dr. Dancha and Dr. Preston's motion to dismiss,  but will permit Plaintiff an opportunity to amend his pleading to properly assert an Eighth Amendment deliberate indifference claim against Dr. Dancha and Dr. Preston.

> 4.    Defendant Hines

The CCS Defendants also move to dismiss Defendant Carol Hines from this action for her lack of personal involvement in the alleged misconduct giving rise to Plaintiff's Eighth

Amendment deliberate indifference claim. Plaintiff asserts that he has sufficiently alleged, for purposes of this stage of the litigation, that Defendant Hines was the onsite administrator employed by CCS, that she oversaw the healthcare provided to all inmates and that she enforced the "One Good Eye Policy." (Doc. No. 1, ¶ 12.)

In the context of a denial of medical care claim under Section 1983, correctional health care administrators and nurse supervisors are generally considered non-medical personnel. As a general rule, non-medical prison officials are not deliberately indifferent under the Eighth Amendment simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Here, Plaintiff has failed to state a claim against Defendant Hines. By Plaintiff's averments, Defendant Hines is not a medical provider and has not treated Plaintiff. Moreover, Plaintiff does not pled facts from which a plausible inference could be drawn that Defendant Hines had "reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [him]." Spruill, 372 F.3d at 236. Rather, the extent of Plaintiff's specific allegations concerning Defendant Hines' conduct is that Defendant Hines responded in the affirmative to Plaintiff's inmate request form inquiring into whether the DOC's "One Good Eye Policy" was still in effect as of August 8, 2016. (Doc. No. 1 at 9.) Such conduct is not of constitutional import. Accordingly, the Court will grant the CCS Defendants' motion to dismiss Plaintiff's complaint as it relates to the Eighth Amendment claim

asserted against Defendant Hines. However, the Court will permit Plaintiff an opportunity to amend his complaint to cure pleading deficiencies against Carol Hines as set forth above.

**B.    Defendant Wexford's motion to dismiss**

Defendant Wexford has also filed a motion to dismiss. (Doc. No. 35.) Wexford argues that it was previously under contract with the Pennsylvania DOC to provide medical care to inmates; however, its contract expired in 2014, more than six months prior to the events that give rise to Plaintiff's present claims. Therefore, Wexford argues that it is improperly named in this suit and should be dismissed. While the docket annotation labels Plaintiff's response to Wexford's motion as a brief in opposition (Doc. No. 44), a review of Plaintiff's filing reveals that Plaintiff consents to the dismissal of Defendant Wexford from this matter. Accordingly, the Court will grant Defendant Wexford's motion to dismiss.

**IV.    PRISON LITIGATION SETTLEMENT PROGRAM**

Having considered the issues presented by Plaintiff's complaint in connection with its disposition of Defendants' motions to dismiss, the Court finds that it would be appropriate at this juncture in the proceedings to refer this case to the Prison Litigation Settlement Program. Notably, it has come to the Court's attention that the DOC has markedly revised its policy regarding ocular care in cataract surgery since Plaintiff filed his complaint in this matter. Indeed, a review of the transcript from the "Policy Revision" proceedings held before Magistrate Judge Carlson on February 7, 2017 (Doc. No. 112), in the matter of <u>Hollihan v. Pennsylvania Department of Corrections</u>, No. 3:15-cv-0005, (M.D. Pa. 2017), of which this Court has taken judicial notice, reveals that the DOC agreed to certain revisions of Section 13.2.1, Access to Health Care Procedures Manual, Section 16, Quality Improvement Plan, Chapter 4, Appendix 16-B, as a condition of settlement in that case. <u>See Ernst v. Child & Youth Servs. of Chester</u>

Cty., 108 F.3d 486, 498–99 (3d Cir. 1997) (holding that "the court may take judicial notice of its own records, especially in the same case"); Golden v. Cook, 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003) ("[I]t is well established that courts are permitted to consider matters of which they may take judicial notice, including . . . publicly available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'"). It appears that these amendments to the DOC's policy governing cataract surgery have a direct bearing on the relief sought by Plaintiff in his complaint. As resolution of this action will likely turn on the application of the DOC's recently-amended policy to this case, the Court will refer this matter for mediation and will stay the filing of an amended complaint pending the outcome of mediation proceedings.

## V.    CONCLUSION

For the reasons set forth above, the Court will: (1) deny as moot Plaintiff's motions to proceed in forma pauperis (Doc. No. 2, 18); (2) grant Wexford's unopposed motion to dismiss with prejudice (Doc. No. 35); (3) and grant the CCS Defendants' motion to dismiss (Doc. No. 32), without prejudice to the right of Plaintiff to file an amended complaint correcting the pleading defects identified in this Memorandum with respect to the Eighth Amendment claims asserted against the CCS Defendants. Moreover, the Court will refer this matter to the Prison Litigation Settlement Program and will stay the filing of an amended complaint pending the outcome of settlement negotiations. An appropriate Order follows.